Good morning, your honors. I'm Isabel Robles. I'm here on behalf of Clay Hernandez, who represents Veronica Sandoval. I'd like to reserve two minutes for rebuttal. Here, the issue that we're arguing is that the search violated Fourth Amendment in two distinct legal claims. But those – but the facts – the facts sort of wrap around each other so that the two claims are wrapped together. Here, there was no warrant for the search. The government is relying on consent. But there was no valid consent in this case. Now, how do we get past – I understand the first part of your argument about why there was no valid stop. But how do we get past the judges finding that your client consented? Well, I think we get past it by the fact that there – you know, the totality of the circumstances shows that the consent was not valid. You've got three different groups of – I'm sorry – three different – three different jurisdictions. You've got local law enforcement, border patrol, and ICE. You've got three different groups of law enforcement who are present. It wasn't just one person asking her for consent. At the time, there was one person close to her who asked. And there were no guns drawn.  And, you know, there are a number of facts that are supportive of the district court's finding, which we review for clear error. So what are the facts that are so compelling on the other side of the equation that that's clearly erroneous? Judge, what I have is on page 26 of our excerpt of record of the motion to suppress, which is that when the defendant gave consent, she gave consent to Marshall Cloud, who was the local law enforcement. But at that time, Marshall Cloud said present were him. Right. He says he was not the only vehicle there, but he was the only person at the driver's side door with her. The dogs – no dogs had arrived and no guns were drawn. And she was told that she could withdraw her consent at any time. She was not handcuffed. She had possession of the keys. They were in the car. Judge, I have that he said that he was there. Behind him was ICE agent Acevedo, the first Acevedo. There were a couple of other ICE agents, including Acevedo's brother. And there were a couple of border patrol vehicles. Assume that's all correct. Assume that there's a lot of cops around. And one of them says, may we search your truck? You don't have to let us do that and you can withdraw the consent at any time. I know he may not have actually said that, but the district judge was entitled to find that he did. And she says here's the keys and never stops him, which is what the testimony is here, viewed best to you. Why is a judge clearly erroneous in finding consent under those circumstances? Well, Judge, it's – I mean, I'm always skeptical that people just consent to have their cars searched. But here, here that's what the guy says. And the judge believes him. Well, I disagree, Judge, because it's equivalent to saying, well, we can take Miranda and turn it into we're going to talk to you. We're going to ask you some questions. And if at any time you're uncomfortable, you can withdraw. You can stop talking to us. We don't say that. We say Miranda must be – you have the right to silence. You don't have to talk to us. So you think before consent can be obtained, the equivalent of a Miranda warning must be given if the police say to the defendant, look, do you consent to us searching? You don't have to and you can stop us at any time. That's what they said here. Isn't that enough to obtain consent? I don't have anything in the record that says that she was ever told she had the right to refuse consent. She was simply told that she had the right to withdraw consent. Withdraw consent so she could stop them. So there's a big difference between that. What case says you have to be told you have the right to refuse consent? Well, I'm focusing mostly on Chan-Jimenez, which is very similar to the facts in this case, you know, which basically is that of the five factors to voluntariness and consent, one is that you are told you do not have to consent. That's very different than being told, well, do you want us to search your car? And if you don't want us to later, you know, you can take it back. That's not the same. That's not the same as being told we'd like to search your car, but you don't have to let us. So turn to the other part of your argument, which is that the stop was illegal and therefore the consent was tainted. Tell us why the stop was illegal. I would say the stop is on this, more on the second part, that every search must be reasonable at its incession. Let's assume that there was perfect consent here. You'd still have a problem if the stop were illegal, would you not? No, absolutely. But tell us why the stop was illegal. Well, I would say it's illegal at its execution because, you know, they find this young woman, 20 years old, she's by herself. She meets the description in the tip. But they don't, the cops are at, the ICE agent Acevedo and Marcia Cloud are at the rest stop. She's parked at the rest stop. She's already stopped. And they don't stop her. Instead, they come up with this plan to follow her, stop her with a lighted-up vehicle and surround her with. Is there any case of which you're aware that requires that a person be stopped as soon as the reason for stopping them comes together? No, Judge. So at the time she is stopped, they have a tip, which is apparently reliable, that a horse trailer and truck of that description are transporting illegal drugs. And they also observe a traffic violation. So they have two independent grounds. And is it your position that neither of those is sufficient? No, Judge. It's my position that, in fact, the execution of the search and seizure, the stop and the seizure, that all of that must be reasonable. Okay. But let's separate those, because I'd understood your brief to argue that the stop itself was not appropriate. Now you're saying maybe the stop was appropriate, but you couldn't have done it the way you did. Is that your argument? I think the stronger argument is that the way that they did the stop was unreasonable. So let's go back to Judge Raper's question. Given those two facts, the tip and the apparent traffic violation, the emissions of smoke, did they have reasonable suspicion to stop the vehicle? I'm not going to concede that, Judge. Well, I'm not asking if you're going to concede it. I'm asking you a question, yes or no. If you think no, tell me why. I think based on the district court's decision and the evidence that was presented, that it is unreasonable, probably, for me to argue that the stop was not reasonable. But the way that the stop and the seizure occurred was unreasonable. What was wrong with the way the stop occurred? Well, the way the stop was unreasonable. I'm sorry. Did they run into her car or, you know, scream at her? I mean, what was unreasonable about the method of stopping her? Well, the fact that she stopped for a mechanical failure of her vehicle, and the local law enforcement stops behind her, behind him is an ICE agent. By the time he asks for consent, there are two vehicles. That has to do with consent. I don't understand the – you talk about the way they did the stop. That was your phrase. Yes. They did the stop by stopping her. I guess I don't understand how what you're saying is separate from the consent argument. And let me just help here, I think. I understand your argument that the way they obtained her consent, lots of people standing around in a big police presence, vitiates the consent. And we can – I can deal with that argument one way or the other. I'm trying to focus on whether or not their stopping of the vehicle was illegal, in your view. If they'd done it more nicely, would it have been okay? If they'd done it what? More nicely. That's a legal thing. No, I think – I think it has to do with that it's all – it's all one lump of dough, you know. It all goes together. They chose, they – the police collectively decided, we're going to do this in this coercive kind of method, instead of in a simpler way or in a way that's related to the reason we're stopping her. I understand your argument. I have one question. You said you thought that the defendant had to be advised that the consent, she did not have to consent. Is that what you said? I believe that's one of the five factors of voluntariness. What? I believe that's one of the five factors of voluntariness, that she does have to be told she can't – she can refuse consent. I just looked at your brief because you cited Karen Jimenez. And what I find is in the next paragraph where you say that there are – you say there are five factors, none of which standing alone is outcome dispositive. And then it says in the – among the five factors is where the defendant was notified that he or she did not have to consent. Correct. All right. So that in itself is not – dispositive is not a requirement. It's one of five factors to be weighed. Is that your argument? No, it's one of five factors. But I think in the totality of the circumstances in the case here, we have that – No, no. The only question is – I'm sorry. The only question is that is not a necessary factor. It's one of five to be weighed with all of the factors. Correct. All right.  Thank you, Your Honor. We'll give you two minutes to rebuttal. Good morning, Your Honors. Erica McCallum from Tucson, appearing on behalf of the United States for the District of Arizona. Just to start out by clarifying an issue with regard to the stop, a factual issue, what the record actually shows is that the defendant was not first observed at that rest stop. Actually, Agent Acevedo, in following up on that tip that he had received, located the defendant traveling in that – the truck pulling the horse trailer that matched that description, traveling eastbound on Highway 82 according to that tip. He then followed that truck to that rest stop where it stopped, and he met up with Chief Cloud. So just to clarify that, the whole process did not start while the vehicle was stopped and the driver was out of it. With regard to the reasonable suspicion for the stop, it appears to me that defense is conceding today that the stop was reasonable. So I'm – I'd just like to rest on my brief on that account unless the Court has any questions about the stop itself. I take it her argument – I don't want to make an argument for your opponent, but I think what she was saying was, look, maybe there was probable – reasonable suspicion to stop the vehicle, but this was a staged enterprise. You – you swoop down on somebody who's – you're stopping for a bad tailpipe with three cops, and you demand to search the car for drugs, and she then gives a consent, and that vitiates the consent. That may not be – I don't want to take liberties with your opponent's argument, and she may stand up in rebuttal and say that's not what she's really arguing. But assume that is. What's your response to that? Well, my response is that there's absolutely nothing wrong with pretextual stop, and I suppose she could argue that the traffic stop was pretextual in that Agent Acevedo asked Chief Cloud to make a traffic stop if he saw it. Your answer is when, I assume? Pardon? Your answer is when? WHREN, the case? Yes. Yes. Yes. Thank you. We understand that the Supreme Court allows – allows you to – if you have – it allows you to make a traffic stop if you want to. But I'm – my question is a little bit different. Can – can the circumstances of the stop be so intimidating that they – that it's very difficult for a court to conclude that the – that the defendant then voluntarily consented to the search of a vehicle? I suppose that could be possible, hypothetically. That's not the case here. Well, I guess what you're asking then is, well, defense has described a number of vehicles following this – this truck that may have made the defendant feel that her will to    not sufficient. That's a good rephrasing. So how do you respond to that? That's not what the record supports. The record shows that it was the defendant driving her truck on this highway followed by Chief Cloud in his unmarked vehicle. He pulled her over for the traffic stop. Agent Acevedo then arrived afterward in an unmarked vehicle. And at some point within the next few minutes, two Border Patrol agents also arrived. Can you show whether the consent was before or after all the others arrived? Well, to be clear, because there's a dispute between the defense's description of the events and the actual record that's described in the – in the government's answering brief, there were the defendant – it's not clear at what point the vehicles arrived, but at the time of her second consent, when she was out of the vehicle, had walked back and was speaking with Agent Acevedo, there were a total of four agents at the scene and a total of four vehicles, two of which were unmarked. At least one of those agents was out of uniform. So this was not a situation that's been described as eight agents with a canine, with eight vehicles surrounding her. It was at least at the point of the initial consent, the defendant speaking one-on-one with Chief Cloud as part of an ordinary traffic stop. She was seated in her vehicle. She was having a conversation just with him. And you testified that the canine units had not arrived at the time of the initial consent. Yes. There were no canine units at the point of the initial consent. During the second consent, at some point during that conversation that the defendant had with Acevedo, a canine did arrive and search the vehicle. And, in fact, just to make sure the record's clear, an alternate finding this court could make is that there was probable cause for the search based on that canine search in combination with the defendant's evasive answers, evasive and untrue answers to Acevedo during her conversation with him, as well as his corroborating that tip. But returning to the question about her second consent with Agent Acevedo, this was a conversation that was not simply, hi, will you consent to a search? It was, hi, will you consent to a search, and where are you traveling? You're going to the fairgrounds for an auction? There is no auction today. Okay, so you're going to see a family that the Lorta family? Will you pass that by 10 miles back? So this was a fairly lengthy conversation one-on-one with Agent Acevedo while these other agents were arriving and the canine search was occurring. Oh, and I would like to, if possible, respond to the discussion regarding the factors that are considered in a voluntary consent. Those are non-exclusive factors under the Cormier case, so none of them individually is determinative. It's a totality of the circumstances consideration. And there's case law that says, now, defense appeared to be in favor to argue today that this was a Miranda-type situation, but this Court has determined that when looking at whether or not Miranda warnings were given, that consent is not testimonial, it does not require Miranda warnings, and this Court has questioned whether Miranda is even a consideration in looking at whether consent is voluntary. Whether or not the defendant was told she had a right to decline her consent, now, this defendant was told you can withdraw your consent at any time. In fact, Agent Cloud asked her to walk back from her truck to the other agents for the purpose of withdrawing her consent if she decided to change her mind. And under the Russell case and the Cormier case, even if the defendant is not told that they can choose not to consent, that's not – that does not necessarily make their consent involuntary. And I take it the search didn't begin until after she was told she could withdraw her consent at any time. That's correct. The way it went was consent to Cloud, told she could withdraw her consent at any point, and then consent to Acevedo. Thank you, counsel. If there's nothing further, then I will submit on my brief and ask this Court to affirm. Thank you. We'll give you another minute or two for rebuttals, if you'd like. Your Honors, I would ask you to consider in particular that, although I'm not in the least arguing that the Miranda warning, you know, is equivalent to this idea of no consent, but it's – it's an allegory. You know, it relates. What I would say is that the testimony is that when she gave consent, and I'll look to page 26 of the appellant's record, that Marshall Cloud testified there were two Border Patrol agents, two ICE agents, him and Agent Acevedo. Somewhere along the line in this process, the defendant is given, you know, she's told, okay, you know, do you want to let us search your truck or whatever, and she says okay. And then she's asked to get out of the truck. She's walked behind her pickup truck, behind the horse trailer, behind Agent Acevedo – behind Marshall Cloud's vehicle, in front of Agent Acevedo's vehicle. So the keys are in the truck. You know, who is free to go? Who's free to go at that point? And who does she – who does she resend consent to? You know, she's immediately asked all of these questions. So – I'm sorry. I'm chuckling, and I shouldn't, because I love a case in which the marshal of Tombstone is involved. Yes. The marshal of Tombstone and Patagonia, which are actually 80 miles apart.  Okay. Thank you, Judge. Thank you.
judges: Reinhardt, Graber, Hurwitz